**KELLIE W. TIPTON CONSTRUCTION COMPANY, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–5001.

United States Court of Appeals, Federal Circuit.

Feb. 1, 2001.

Rehearing Denied April 18, 2001.

Before NEWMAN, CLEVENGER, and SCHALL, Circuit Judges.

## DECISION

SCHALL, Circuit Judge.

Kellie W. Tipton Construction Company ("Tipton") appeals the decision of the Unit-

ed States Court of Federal Claims that granted summary judgment in favor of the United States denying Tipton's protest of the Department of the Army's ("Army's") award to Terry Land Development, Inc. ("TLD"), of a contract for the installation and replacement of water and sewer lines at Fort Campbell, Kentucky. Because the Army did not act unlawfully, arbitrarily, capriciously, or abuse its discretion in awarding the contract to TLD, we *affirm*.

## DISCUSSION

### I.

On August 17, 1998, the Army issued its Request for Proposal ("RFP") with respect to the Fort Campbell contract. The RFP provided instructions for the preparation and submission of proposals. In that regard, under a section entitled "SUBMISSION OF PROPOSAL," it stated that a proposal should include two sections, a technical proposal and price proposal. The RFP described one part of the technical proposal as relating to past performance, stating that the offeror was required to include "[a] list of a minimum of ten (10) contracts and subcontracts ... [the] offeror has performed within the last three (3) years similar to this requirement." The second part of the technical proposal was an Experience Modification Factor ("EMF"), under which each offeror was "evaluated based on information provided by insurance companies regarding [the] offeror's safety record." In the price proposal section of the RFP, each offeror was required to "[list] all costs other than direct material, labor and equipment."

The RFP informed offerors how their proposals would be evaluated and the contract awarded. The RFP stated that the contract would be awarded to "the offeror whose offer represents the best value after evaluation in accordance with the factors and subfactors in the solicitation." The RFP noted that an offeror's technical proposal would "be evaluated using the information obtained from the offeror's business references provided with the proposal and from any other sources and/or records available to the Government." The Army was instructed to contact "[p]revious and/or current customers ... to obtain past performance information regarding customer satisfaction."

In response to the RFP, the Army received seven proposals for the Fort Campbell contract, including one from Tipton and one from TLD. Tipton submitted a list of thirteen references in its technical proposal, while TLD submitted a list of nineteen references. The Army determined that, since it was facing a deadline of the end of the fiscal year for award of the contract, it would evaluate the technical proposal section of each of the seven proposals on the basis of five past performance records. In Tipton's proposal, each job listed for appraisal was with either the Army Corps of Engineers or the Department of Public Works, both at Fort Campbell. The Army sent a Past Performance Questionnaire ("PPQ") to the Corps of Engineers' project manager, Brian Mosier, and to the chief of the Department of Public Works, Floyd Brown. Mr. Moiser gave Tipton a rating of 43/45, while Mr. Brown gave it a rating of 50/50.[1] In completing his PPQ, Mr. Brown noted three

---

1. Each rating indicates how many rating points each contractor was awarded out of the total possible rating points for a given PPQ. For example, Tipton was given 43 points out of a possible 45 in its PPQ from Mr. Moiser based on Mr. Moiser answering nine

questions about Tipton's work on a scale from one to five, with five being the highest rating (EXCELLENT). The closer a contractor's PPQ gets to the total possible ratings points, the more favorable the past performance rating is.

contracts that Tipton had performed for the Public Works Department.

In the evaluation process, the Army also relied upon data from DD Form 2626, "Performance Evaluation (Construction)" ("DD Form 2626") regarding previous construction projects at Fort Campbell. The Army used three completed DD Forms 2626 for Tipton's past performance evaluation. Tipton's resulting Technical score, based on its five past performance ratings combined with its EMF, was 300. Tipton received a Price score of 204.69 based on its price proposal.

In the course of evaluating TLD's technical proposal, the Army faxed PPQs to four of TLD's past contract references. The Army received responses from two of these references. Thickston Construction gave TLD a rating of $^{49}\!/_{50}$, and P & L Railroad gave TLD a rating of 12/50. As in the case of Tipton, the Army also considered DD Forms 2626 for three contracts TLD had performed at Fort Campbell. These five past performance evaluations, combined with TLD's EMF, gave TLD a Technical score of 200. The Army also awarded TLD a Price score, based on its price proposal, of 266.67.

Tipton was awarded the Fort Campbell contract on September 30, 1998 because its combined Technical and Price score, 504.69, was higher than TLD's which was 466.67. TLD filed a protest with the General Accounting Office ("GAO"), and it was discovered the P & L Railroad's PPQ contained an erroneously low score. Upon correction of the PPQ, TLD was found to have a Technical score of 300. Based on the corrected Technical score, TLD's combined Technical and Price score was 566.67, which was higher than that of each of the remaining six proposals, including Tipton's. The Army concluded that, with this corrected combined score, TLD's proposal represented the best value to the government. Consequently it awarded the contract to TLD and, on November 23, 1998, asked Tipton to suspend work on the contract. On December 11, 1998, Tipton filed a protest with the GAO. The protest was unsuccessful. However, during the protest the Army corrected an error in its calculation of the Price score of each proposal, causing TLD's Price score to remain the same, 266.67, and Tipton's to drop to 146.67.

On March 30, 1999, Tipton filed suit in the Court of Federal Claims, alleging that the Army had acted improperly in the handling of its proposal and in the award of the Fort Campbell contract to TLD. In its complaint, Tipton alleged that DD Form 2626 was flawed, and that the Army should not have used the form in determining its Technical score. Tipton also alleged that the Army should have considered Mr. Brown's PPQ as an evaluation of three separate contracts, and as a result, counted the rating on the PPQ three times. Finally, Tipton alleged that the jobs the Army had used to evaluate TLD did not involve work similar to that required for the Fort Campbell contract and that, consequently, they should not have been considered when determining TLD's Technical score.

In due course, the government moved for summary judgment dismissing Tipton's complaint on the administrative record. In granting the motion, the Court of Federal Claims held that the Army's actions in awarding the contract to TLD were not unreasonable or unlawful. The court found that both TLD and Tipton were treated the same, and that even if Tipton had been awarded a higher Technical score, it would not have been able to overcome the difference between its and TLD's combined scores. The court determined that the Army's use of the DD Form 2626 was not unreasonable or unlawful and that,

in any event, any harm from the use of the form was minimal since the form was used for both TLD and Tipton. The court also found that the TLD contacts to which the Army looked in evaluating TLD's technical proposal involved work similar to that required under the RFP for the Fort Campbell contract. Finally, the court determined that the Army had used the same number and the same kind of past performance evaluations to judge both TLD and Tipton, three DD Forms 2626 and two PPQs, and therefore, the Army's failure to use all past performances cited in Tipton's technical proposal was not unreasonable or prejudicial.

## II.

■ To prevail on its bid protest action, Tipton must show that significant errors occurred in the procurement process and that those errors were prejudicial. *See Advanced Data Concepts, Inc. v. United States,* 216 F.3d 1054, 1057 (Fed.Cir. 2000). To be erroneous, the Army's actions during the procurement process must be such that they did not "evince rational reasoning and consideration of relevant factors." *Id.* at 1058. We must look to see if the Army erred by either failing to comply with the solicitation or by acting unreasonably during the procurement process. *See id.* If such an error is found, for it to be prejudicial, Tipton must prove that "there was a substantial chance it would have received the contract award but for [the alleged] error." *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir.1996).

■ We review a grant of summary judgment upon the administrative record without deference to the Court of Federal Claims. *Advanced Data Concepts,* 216 F.3d at 1057. We reapply the summary judgment standard in our independent review of the administrative record, *id.,* to determine whether no genuine issues of material fact are present and whether the moving party is entitled to judgment as a matter of law. *Costain Coal, Inc. v. United States,* 126 F.3d 1437, 1440 (Fed.Cir. 1997). In this case, the only facts that are disputed, regarding whether the alleged procurement errors were prejudicial to Tipton, are not material for reasons that will become clear below. Post-award bid protests are reviewed under the Administrative Procedure Act's ("APA's") standard of review. 28 U.S.C. § 1491(b)(4) (1994); *Advanced Data Concepts,* 216 F.3d at 1057. Under the APA, a court must "hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A) (1994).

## III.

■ Tipton's first argument on appeal is that the Army's use of the DD Form 2626 for three of Tipton's past performance evaluations was improper because the form is fundamentally flawed. Tipton asserts that, since the form requires written analysis for any evaluation of "outstanding" or "unsatisfactory," no one who fills out the DD Form 2626 uses these categories. Tipton contends that this is evident from the fact that none of the forms used by the Army when considering its proposal contained "outstanding" or "unsatisfactory" evaluations. Tipton also cites testimony to the effect that the forms are flawed and should not have been used for past performance evaluations. Tipton argues that if the three DD Forms 2626 had not been used, it would have had higher past performance ratings, would have received a perfect Technical score of 400, and consequently would have had a higher combined score than TLD, thereby entitling it to award of the Fort Campbell contract.

The Army's use of the DD Form 2626 in evaluating Tipton's technical proposal was not unlawful, arbitrary, capricious, or an abuse of discretion. First, there is no prohibition in the RFP against use of the form, or against use of any other past performance evaluation, in determining an offeror's Technical score. The RFP indicates that an offeror's "[t]echnical proposal will be evaluated using the information obtained from the offerors' business references provided with the proposal and from *any other sources and/or records available to the Government.*" (emphasis added). The DD Form 2626 is "any other source[ ] and/or record[ ] available to the Government." Additionally, the DD Form 2626, itself, indicates that it is used for the evaluation of a contractor's performance. The form is entitled "Performance Evaluation," and the form states that the information on the form "must be in sufficient detail to assist contracting officers in determining the contractor's responsibility." The Army's use of the DD Form 2626 to evaluate a contractor's past performance cannot be considered unreasonable when the form is made specifically to do just that–evaluate a contractor's performance. Furthermore, Tipton has pointed to no evidence that the Army was aware, before using the DD Form 2626 in this procurement, of any problems with the form. Although Tipton presented testimony that the form is flawed and cannot be relied on, none of this testimony indicates that the Army was aware of the form's alleged flaws. For it to be found that the Army acted irrationally in using the DD Form 2626, there must be some evidence that it knew the form is flawed. There is no such evidence on the record.

■ The next error Tipton alleges is that the Army, improperly, failed to consider all three contracts referenced in Mr. Brown's PPQ. Tipton asserts that since Mr. Brown gave it a rating of $^{50}\!/\!{}_{0}$ for three contracts, the Army should have counted Mr. Brown's rating three times instead of once when calculating its Technical score. Tipton contends that since Mr. Brown provided this information to the Army, the Army was required to use the information. Tipton argues that if all three of Mr. Brown's ratings had been used during the bid evaluation process, it would have had a higher Technical score and, as a result, a substantial chance of being awarded the Fort Campbell contract.

Although Mr. Brown did note in his PPQ three contracts that Tipton performed for the Department of Public Works at Fort Campbell, the Army did not act unlawfully, arbitrarily, capriciously, or abuse its discretion in counting Mr. Brown's rating only once. The Army simply followed the proposal evaluation procedure described in the RFP. The RFP states that "[t]echnical proposal[s] will be evaluated using the information obtained from offerors' business references provided with the proposal and from any other sources and/or records available to the Government." Nothing in the RFP required that the Army consider ratings for each of the ten or more contracts an offeror submitted with its technical proposal. The RFP also did not require that the Army consider all of the information that was provided by an offeror's business references. The RFP states that "[p]revious and/or current customers will be contacted to obtain past performance information regarding *customer satisfaction.*" (emphasis added). The Army followed the RFP when evaluating Tipton's technical proposal by considering Mr. Brown's high level of satisfaction with Tipton while not considering individual ratings for each of Tipton's contracts with the Department of Public Works. The Army was looking for an overall assessment of an offeror's ability to perform. As the RFP indicated, when the

Army sent Mr. Brown a PPQ, it was not looking for an evaluation of Tipton's performance under any specific contract.

■ The final error Tipton alleges is that the Army considered previous contracts in TLD's technical proposal that did not involve requirements similar to the requirements of the contract in question, thereby violating the requirement of the RFP that an offeror's technical proposal contain a list of the contracts an offeror has performed that were "similar" to the requirements described in the RFP. According to Tipton, none of TLD's previous contracts that the Army considered when computing TLD's Technical score were contracts for water and sewer line work, and thus were not "similar" to the contract at issue. Due to this lack of similarity, Tipton argues, the Army could not properly use the previous contracts in its evaluation of TLD's technical proposal. Tipton concludes that if "similar" TLD contracts had been used in the evaluation process, it (Tipton) would have had a higher Technical score, and thus a substantial chance of being awarded the Fort Campbell contract.

The Army, in considering TLD's previous contracts that did not directly involve water and sewer line installation and replacement, did not act unlawfully, arbitrarily, capriciously, or abuse its discretion. TLD's previous contracts all contained aspects of work that were similar to the work requirements described in the RFP. Tipton is correct that the RFP called for a list of previous contracts that were similar to requirements of the RFP, but the requirements the RFP describes are more numerous and detailed than the overarching purpose of the contract: the installation and replacement of water and sewer lines. The requirements described in the RFP include rock and soil excavation, utility installa-

tion, pipe bursting and horizontal directional drilling, replacement of concrete sidewalks, curbs, and gutters, demolition, and erosion control. The five previous contracts the Army used to evaluate TLD's past performance all contained requirements similar to those listed in the RFP. TLD's P & L Railroad contract involved ditching, embankment, and grading work, all of which are similar to the requirements described in the RFP. TLD's contract for installing a canopy at a fuel station involved earth work, concrete services, and a degree of piping at a new fuel farm–all work that is similar to the requirements under the RFP. The work under TLD's contract for installing guardrails along a road was similar to the work described in the RFP since it involved construction work. TLD's contract to replace a gas main involved earth excavation to varying depths–work that is similar to the work described in the RFP. Finally, TLD's contract to remove and demolish a two-story building also related to work similar to that described in the RFP because it involved construction and demolition of utilities. Each of these previous contracts, although different from the Fort Campbell contract, involved work similar to the work described in the RFP.

For the foregoing reasons, we reject Tipton's arguments and affirm the decision of the Court of Federal Claims denying Tipton's bid protest.

Each party shall bear its own costs.